IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WORLDWIDE INSURANCE NETWORK, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:04CV00906 |
| TRUSTWAY INSURANCE AGENCIES, LLC ASSURANCE AMERICA CORPORATION, THOMAS-COOK HOLDING COMPANY, and JAMES C. COOK | ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

TILLEY, Chief Judge

This suit arises from a dispute between Plaintiff Worldwide Insurance Network, Inc. ("Worldwide") and Defendants Thomas-Cook Holding Company ("Thomas-Cook") and James C. Cook ("Mr. Cook"),[1] regarding allegations of wrongdoing growing out of the parties' contract for insurance business. This case is before the Court on Defendants' Motion to Dismiss [Doc. #6] for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons set forth below, Defendants' motion will be GRANTED as it relates to

---

[1] Although suit was initially also filed against Trustway Insurance Agencies, LLC and Assurance America Corporation, these parties are not currently defendants in this case. On December 6, 2004, Plaintiff filed a Notice of Voluntary Dismissal of Defendants Trustway and Assurance America [Doc. #15]. On November 29, 2005, Plaintiff filed a Motion for Leave to File an Amended and Supplemental Complaint and to add Trustway and Assurance America as defendants to this action [Doc. #20]. Plaintiff's Motion for leave is currently pending.

this Court's lack of personal jurisdiction over Defendants, but DENIED as it requests that this action be dismissed.

I.

The facts in the light most favorable to the Plaintiff are as follows: Plaintiff Worldwide is a North Carolina corporation engaged in the business of providing insurance and other financial products and services to independent insurance agencies. Worldwide conducts business under the trade name Smart Choice Agents Program. Under the Smart Choice Agents Program, independent insurance agents receive services from Worldwide and in turn share with Worldwide a portion of their commissions.

In 2000, Worldwide contacted Thomas-Cook, through its president James Cook, in the state of Georgia. The parties began to discuss entering into an agreement where Thomas-Cook would serve as the state managing agent for Georgia. The negotiation of the agreement took place through multiple visits by Worldwide representatives to Georgia, and at least one visit from Mr. Cook to North Carolina. The remaining negotiations were conducted through phone calls between Georgia and North Carolina.

On December 14, 2000, Worldwide entered into a Smart Choice Managing Agent Agreement ("Agreement") with Thomas-Cook that required it to create a separate corporation, called Smart Choice Agents Program of Georgia, Inc. Then, pursuant to the Agreement, Thomas-Cook was established as the managing agent

corporation for the Smart Choice Agents Program of Georgia, Inc.

Under the terms of the Agreement, Thomas-Cook recruited and managed independent insurance agents who participated in the Smart Choice Agent Program of Georgia. All of the agents were located in the state of Georgia. The Agreement also required Worldwide to perform certain services for Thomas-Cook including: "accounting services, preparation and mailing of a magazine and promotional materials, negotiations with carriers and other providers, preparation and mailing of marketing videos and recruiting kits, and the planning, execution, administration, and payment for sales and training meetings." (Pl.'s Resp. 3; Bostian Aff. ¶ 7.) Additionally, employees of Thomas-Cook attended training meetings held by Worldwide in North Carolina and other locations at least once a year. Mr. Cook testified by declaration that in the four years at issue he visited the Worldwide offices on approximately eight occasions. (Cook Decl. ¶ 10.)

The Agreement entered between the parties also provided that Worldwide had a right of first refusal to buy the business from Thomas-Cook upon the receipt of a legitimate offer to purchase the interest. On July 24, 2004, Worldwide received a letter from counsel for Thomas-Cook notifying them of the sale of Smart Choice Agents Program of Georgia, Inc. to Trustway Insurance Agencies, LLC ("Trustway"), and Assurance America Corporation ("Assurance America").[2]

---

[2] Assurance America is an insurance company that offers insurance products for sale through captive and independent insurance agencies, including Worldwide's Smart Choice Agencies. Trustway is a wholly owned subsidiary of

3

Worldwide objected to the adequacy of the notice of offer because Thomas-Cook had failed to include a complete copy of the Asset Purchase Agreement. Worldwide also objected to the sale on the following grounds: (1) the Smart Choice Agreement is for personal services and is not assignable without the consent of Worldwide, (2) the purchase offer was inflated and substantially above the fair market value and was therefore not "legitimate," and (3) the sale of the Smart Choice business to Assurance America and Trustway would constitute a breach of the Agreement's non competition clause because Assurance America was a competitor with Worldwide for independent insurance agencies. (Comp. ¶ 14.)

On August 31, 2004, Worldwide filed a Complaint against Defendants in North Carolina state court [Doc. #1], for declaratory judgment, breach of contract, tortious interference with contract, and fraud. Worldwide also sought a temporary restraining order, preliminary injunction, and permanent injunction to stop the transfer of rights under the Agreement to Assurance American and Trustway. On October 1, 2004 this case was removed from state court to this Court [Doc. #31]. On October 28, 2004, Defendants filed a Motion to Dismiss for lack of personal jurisdiction and failure to state a claim for fraud upon which relief can be granted [Doc. #6]. Plaintiff responded to Defendants' Motion to Dismiss on December 6,

---

Assurance America.

2004 [Doc. #12]. The Court will now consider Defendants' motion.[3]

## II.

Defendants first request that this action be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). When such a motion is made, the plaintiff bears the ultimate burden of proof to show that personal jurisdiction is proper as to each defendant by a preponderance of the evidence. Ward v. Wavy Broadcasting, LLC, 2003 WL 715910, at *2 (M.D.N.C. Feb. 25, 2003) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, when personal jurisdiction is examined only on the basis of motion papers – including affidavits, legal memoranda, and the allegations of the complaint – the plaintiff is required only to make a *prima facie* showing of personal jurisdiction. Combs, 886 F.2d at 676. In determining whether a *prima facie* showing has been made "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id.

Whether personal jurisdiction is proper involves a two-part inquiry. First, the court must determine whether the state long-arm statute authorizes the exercise of jurisdiction under the circumstances. Mylan Labs. Inc. v. Akzo, N.V., 2 F.3d 56,

---

[3] Defendants' Motion to Dismiss will be considered only as it applies to the parties currently in the case: Thomas-Cook and Mr. Cook. The decision whether to grant Plaintiff's Motion to Amend the Complaint should be made by a court with personal jurisdiction over Defendants.

5

60 (4th Cir. 1993). Second, if authorization under the long-arm statute is found, the court must then consider whether the statutory assertion of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment to the Constitution. Id.

A.

The applicable North Carolina long-arm statute in this case is N.C. Gen. Stat. §1-75.4. "The provisions of [the North Carolina long-arm] statute are to be given a liberal construction, making available to the North Carolina courts the full jurisdictional powers permissible under federal due process." Ward, 2003 WL 715910, at *2 (citing Vishay Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1065 (4th Cir. 1982). Specifically, Worldwide relies on §1-75.4(1)(d) of the North Carolina long-arm statute which provides for *in personam* jurisdiction over a party who has "engaged in substantial activity within this state," and §1-75.4(5) which provides for *in personam* jurisdiction in actions for certain local services, goods or contracts. N.C. Gen. Stat. §§1-75.4 (1) & (5).

Applying the provisions of the North Carolina long-arm statute liberally, Worldwide has satisfied the first inquiry in support of personal jurisdiction. First, the contract between the parties required Worldwide to issue checks to Defendants from Worldwide's North Carolina checking account. See Cherry Bekaert & Holland v. Brown, 394 S.E.2d 651, 654-55 (N.C. Ct. App. 1990) (holding that monies paid to defendant from a North Carolina account were sufficient to fulfill the statutory

6

requirements for long-arm jurisdiction); c.f. Pope v. Pope, 248 S.E.2d 260, 261-62 (N.C. Ct. App. 1978) (explaining that a money payment is a "thing of value" within the meaning of §1-75.4 (5)(e)). In fact, pursuant to the agreement, Worldwide drew forty-four (44) checks, totally in $358,739.83 on North Carolina bank accounts, and subsequently mailed them to Defendants. Second, pursuant to the agreement between the parties, services were performed within the state of North Carolina by Worldwide. See N.C. Gen. Stat. §1-75.4(5)(a). For example, Worldwide prepared and mailed magazines, promotional materials, marketing videos, and recruiting kits at its local offices. Additionally, Worldwide planned and executed training meetings that were attended by Mr. Cook and Thomas-Cook employees. Thus, even though these activities do not relate to the specific portion of the agreement at issue in this case, the right of first refusal provision, they do merit long-arm jurisdiction under a liberal reading of the North Carolina statute. See Cherry Bekaert & Holland, 394 S.E.2d at 655 (explaining that long-arm jurisdiction was proper because all of the activity related to a single contract into which the parties to the case entered); Hiwassee Stables, Inc. v. Cunningham, 519 S.E.2d 317, 320 (N.C. Ct. App. 1999) (holding that a check drawn from a bank in the state of North Carolina and distributed to defendants was sufficient for jurisdiction under N.C. Gen. State §1-75.4). Thus, the inquiry now turns to whether the exercise of personal jurisdiction over Defendants satisfies the requirements of the Due Process Clause.

B.

The Due Process Clause of the Fourteenth Amendment serves to limit the power of a state to assert *in personam* jurisdiction over a non-resident defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 109 S.Ct. 1868 (1984). Thus, in order for personal jurisdiction to exist over Defendants, "a sufficient connection between defendant and the forum state must be present so as to make it fair to require defense of the action in the forum state." Hiwassee Stables, 519 S.E.2d at 320 (citing Kulko v. California Superior Court, 436 U.S. 84, 91, 98 S.Ct. 1690 (1978)). When the sufficiency of a non-resident defendant's contacts are examined, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945 (4th Cir. 1994) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174 (1985)).

There are two types of personal jurisdiction: specific and general. Lesnick, 35 F.3d at 945-46; Regent Lighting Corp. v. American Lighting Concept, Inc., 25 F. Supp. 2d 705, 710 (M.D.N.C. 1997). Specific jurisdiction exists when the forum state asserts personal jurisdiction over the defendant in a suit "arising out of or related to" the defendant's purposeful contacts with the state. Helicopteros Nacionales, 466 U.S. at 414-16. For specific jurisdiction to be found, due process requires that the defendant "purposely direct its activities at the forum." Federal

8

Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir. 1989). If, on the other hand, the issues before the court did not arise in the forum state, then general jurisdiction exists only when the defendant had sufficient "continuous and systematic contacts" with the forum state. Helicopteros Nacionales, 466 U.S. at 414. Thus general jurisdiction requires "a more demanding standard than is necessary for establishing specific jurisdiction." AIS Scan Inc. v. Digital Services Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

In order for this Court to have specific jurisdiction over Defendants, Worldwide is required to show: (1) the extent that Defendants "purposefully availed" themselves of the privileges of conducting activities in North Carolina; (2) whether Plaintiff's cause of action arises from Defendants' activities purposely directed at North Carolina; and (3) that the exercise of personal jurisdiction would be constitutionally reasonable. Id. Additionally, "a contract with a resident of a forum state does not automatically constitute sufficient contacts to support the exercise of specific jurisdiction, even when the dispute arises from the contract." Burlington Indus., Inc. v. Yanoor Corp., 178 F. Supp. 2d 562, 567 (M.D.N.C. 2001). Rather, the contract must have a substantial connection with the state so that "the nature and quality of a defendant's relationship to the forum 'can in no sense be viewed as random, fortuitous, or attenuated.'" Id. (citing Burger King Corp., 471 U.S. at 474). Worldwide contends that Defendants have the requisite contacts with the state of North Carolina for specific jurisdiction to be exercised.

9

Worldwide asserts that by entering into the Agreement, Defendants "purposefully availed" themselves of the protection of the laws of North Carolina. However, the evidence suggests that the contacts that exist between Defendants and North Carolina arose because Worldwide was located in North Carolina and not because Defendants purposely directed their activities at the state of North Carolina. Sea-Roy Corp. v. Parts R Parts, Inc., 1996 WL 557857, at *6 (M.D.N.C July 30, 1996) ("[I]t is necessary to distinguish between a defendant's acts which are aimed at a plaintiff who is located in the forum and those which are aimed at the forum itself.") (citations omitted). First, the Fourth Circuit has given great weight to the question of who initiated the contact between the parties. See, e.g., Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451 (4th Cir. 2000) (finding no personal jurisdiction when the contractual relationship was initiated by the Plaintiffs); Sea-Roy, 1996 WL 557857, at *6 ("[P]ersonal jurisdiction cannot be exercised over a foreign supplier who has no contact with the forum other than being solicited to contract by an individual in the forum."); cf. Burlington Indus. v. Yanoor Corp., 178 F. Supp. 2d 562 (M.D.N.C. 2001) (finding an adequate basis for personal jurisdiction over the defendant because defendant initiated the contact with plaintiff in North Carolina and portions of the contract were negotiated in North Carolina). In this case, Worldwide contacted Defendants in Georgia to discuss the possibility of Thomas-Cook serving as the state managing agent for the Smart Choice Agents Program in Georgia. See

10

Cree, Inc. v. Exel North Am. Logistics, Inc., 2004 WL 241508, at *3 (M.D.N.C. Feb. 6, 2004) (upholding personal jurisdiction primarily because defendant initiated business in North Carolina with plaintiff and substantial performance under the contract was to occur in North Carolina). Additionally, although it appears that on at least one occasion during the negotiation of the agreement, Mr. Cook traveled to North Carolina, the majority of the contract was negotiated in Georgia or over the telephone. See Sea-Roy, 1996 WL 557857, at *6 (holding that although the foreign defendant visited North Carolina several times to work out some details of the sales business, no specific jurisdiction existed because the evidence "failed to show that Defendant . . . 'purposely directed' its activities at North Carolina").

Worldwide also contends that because the Agreement required it to perform services in North Carolina for the benefit of the Defendants – including keeping an accounting of the commissions received from carriers; negotiating contracts with carriers and other providers, preparing marketing videos, holding training sessions and sales meetings; and writing checks for Defendants' portion of the commissions collected – Defendants had sufficient contacts in North Carolina to support the exercise of personal jurisdiction. A similar argument, however, was made in Diamond Healthcare of Ohio v. Humility of Mary Health Partners, 229 F.3d at 451-53. In Diamond Healthcare, the Fourth Circuit rejected the plaintiff's claim that its own activities in the state of Virginia pursuant to the parties' contract supported a finding of personal jurisdiction over defendants in a Virginia court. Id. Rather, the

11

court noted that "development of this argument can only lead to the conclusion that [plaintiff] directed its activities under the contract toward Ohio, not that [defendant] directed its activities towards Virginia," and held that personal jurisdiction over the Ohio defendants was not present. Id. at 452. Similarly, here, although Worldwide performed some of its administrative functions under the Agreement at its offices in North Carolina, all of the work to be performed by Defendants pursuant to the contract was to take place solely in the state of Georgia. Additionally, all of the Thomas-Cook employees work only in Georgia and all of the agents participating in the Smart Choice Agents Program of Georgia are located in Georgia.

Finally, personal jurisdiction over Defendants in the state of North Carolina is not constitutionally reasonable. Defendants are both located in Georgia and conduct their business in Georgia. Worldwide contacted them in Georgia to propose that Thomas-Cook become the managing general agent for the Smart Choice Agents Program of Georgia. The only contact that Defendants had with North Carolina resulted from the fact that Worldwide's headquarters happened to be located there. See Sea-Roy 1996 WL 557857, at *6 ("Only those acts [aimed at the forum itself] constitute purposeful and deliberate contact with the forum which makes it fair and reasonable for the forum to exercise personal jurisdiction over a nonresident defendant") (citations omitted). This contact between Defendants and North Carolina was hardly so purposeful that litigation in North

12

Carolina could have been reasonably foreseen.[4] See Chung v. Nana Dev. Corp., 783 F.2d 1124, 1127 (4th Cir. 1986) (holding no personal jurisdiction when the Alaskan defendant could not have reasonably foreseen being sued in Virginia). If either party "purposefully availed" themselves of the laws of another state, Worldwide did so in the state of Georgia. Thus specific jurisdiction over Defendants in the state of North Carolina would be inconsistent with the Due Process Clause.

Because Worldwide has failed to produce evidence sufficient to satisfy the more lenient standard necessary to prove specific jurisdiction, the more stringent general jurisdiction analysis is not necessary. Id.; ALS Scan, Inc., 293 F.3d at 715 ("[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction.")

III.

A district court "in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Fourth Circuit has interpreted this statutory provision expansively, "authoriz[ing] the transfer of a case to any district, which would have had venue if

---

[4] Although the Agreement specified North Carolina law to govern disputes under the contract, choice-of-law provisions are insufficient to confer jurisdiction without some other actions by defendants evidencing a deliberate affiliation with the forum state. See Burger King Corp., 471 U.S. at 482.

13

the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment to the transferee district." Porter v. Groat, 840 F.2d 255, 258 (4th Cir. 1988); Regent Lighting, 25 F. Supp. 2d at 713 (transferring case to the Central District of California where defendants reside and where the alleged cause of action arose because defendants were subject to personal jurisdiction in that court).

In this case, Defendants are both located in the state of Georgia. Specifically Thomas-Cook is a Georgia corporation with its principal office located in Fulton County, Georgia and Mr. Cook is a resident of Fulton County, Georgia. (Compl. ¶¶ 4-5.). Both defendants, therefore, would be subject to personal jurisdiction in the United States District Court for the Northern District of Georgia in which Fulton County is located. Thus, in the interest of justice, this case will be transferred to the Northern District of Georgia.

IV.

For the reasons set forth above, Defendants' motion will be GRANTED as it relates to this Court's lack of personal jurisdiction over Defendants, but DENIED as it requests that this action be dismissed. Additionally, this case will be TRANSFERRED to the Northern District of Georgia.

Because the Court lacks personal jurisdiction over Defendants, it is unnecessary to address Defendants' motion to dismiss for failure to state a claim

14

for which relief can be granted.

      This the day of February 6, 2006

                                                   /s/ N. Carlton Tilley, Jr.
                                             United States District Judge